On 10 May, 1820 (the day when Hunter's note became due), there was due for principal and interest on Leary's note $841.50, which Hunter afterwards received or had the benefit of.
An action was afterwards brought on Hunter's note in the name of William Coffield, as assignee of Slaughter, and a judgment recovered, execution issued, and the sheriff collected the money. *Page 16 
The court instructed the jury that the contract stated by Hunter was a corrupt bargaining within the meaning of the statute on which the action was founded; and that if consummated by the receipt of usurious interest thereon would entitle the plaintiff to recover. And on this subject the court instructed the jury that the statute was not to be evaded by the interposition of any forms, nor were they to be blinded by any contrivances to defeat its provisions; that it was not necessary that the defendant should himself have received the money, but a receipt by an agent was sufficient; that though the action brought on the note was in the name of William Coffield, and though the money appeared to be collected for him, yet if it was really for the use or benefit of the defendant, or if the defendant otherwise received the money on the note, the plaintiff was entitled to recover. But that if they were satisfied, on examining the evidence, and the inferences they might draw from it, that although the defendant made the contract, as stated by Hunter, yet that in truth and fact he made it on account of William Coffield, had no personal interest in it; that the suit on the note was not brought for his use, nor the money received by him, nor collected for his (30) benefit, that then the plaintiff could not recover, as one necessary ingredient would be wanting to complete the usury, that is, a receipt of money on the unlawful contract.
Verdict for defendant; new trial refused; judgment, and appeal.
The question presented to the Court in this case may be decided by an application of the familiar rule that in all crimes under the degree of felony there are no accessories, but that all persons concerned therein, if guilty at all, are principals. This is not an attempt to punish the defendant for a crime committed by another, but to punish him for an offense imagined, contrived, and partly executed by himself in person, though consummated by another under his direction and appointment. The record distinctly states that the corrupt agreement was made by the defendant, and it is evident that it would have been carried through by him to its completion but for the circumstances, real or feigned, of his not having the money to lend, but only a note, then in the possession of Slaughter. If this were really the true reason why he did not lend the money, it shows that he entered fully into the scheme of committing the offense; and if it was only a pretense, it exhibits a device somewhat awkwardly contrived and easily penetrated, to evade the statute. *Page 17 
The specific crime then meditated was that Slaughter should receive the note from Hunter, and collect the money when due, and that he should also transfer to Hunter the note then due from Leary. And if the usurious agreement had been thus carried into execution it would have been impossible to raise a doubt as to the defendant's guilt, on Slaughter's receiving the unlawful interest. Slaughter was the defendant's agent for the very purpose of committing the crime, and though it was not completed precisely in the manner apparently contemplated, yet the authority given to Slaughter enabled him to indorse the note to William Coffield, and thereby led to the perpetration of the offense in a different shape.
These circumstances fully warrant an application of the legal (34) maxim that in investing another with a lawful authority, a man may limit it as strictly as he pleases; and if the party authorized do transgress his authority, though it be but in circumstance expressed, it shall be void in the whole act. But where a man is author and mover to another to commit an unlawful act, then he shall not excuse himself by circumstances not pursued. Thus if a man make a letter of attorney to A. to deliver livery and seizin in the capital messuage, and he doth it in another place of the land; or, between the hours of 2 and 3, and he doth it after or before; in these cases the act of attorney as to execute the estate is void.
But, on the other hand, if a man command A to rob B on Shooter's hill, and he doth it on Gadd's hill; or to rob, him on such a day, and he doth it next day; or to kill B, and he doth it not himself, but procureth C to do it; or to kill him by poison, and he doth it by violence; in all these cases, notwithstanding the fact be not executed in circumstances, yet he is accessory nevertheless. Mandata licita recipiunt strictam interpretationem,sed illicita latam et extensam. Bacon's Maxims, Reg., 16.
A kindred principle is laid down and illustrated by the same great writer; that all crimes have their inception in a corrupt intent, and have their consummation and issuing in some particular fact, which, though it be not the fact at which the intention of the malefactor was leveled, yet the law giveth him no advantage of the error, if another particular ensue of as high a nature. Therefore, if an empoisoned apple be laid in a place to empoison J. S., and J. D. cometh by chance and eateth it, this is murder in the principal that is actor, and yet the malice inindividuo was not against J. D.; so if a thief find a door open, and come in by night and rob a house, and be taken with the mainour, and break a door to escape, this is burglary, yet the breaking of the (35) door was without any felonious intent, but it is one entire act. Reg., 15. *Page 18 
These sound and elementary principles of criminal justice, the nonobservance of which would derange the harmony of the whole system and lead to manifold evasions, and a dangerous state of impunity, appear to me to fully justify the view I have taken of this case. They are emphatically just and important in expounding a statute, to escape from the penalties of which the cupidity of mankind is daily inventing colorable pretexts and artful expedients. Without their application the money lender might make his corrupt bargains, but, keeping his funds in another person's hands, refer the borrower to him for the sum wanted, and to secure the repayment by a note with unlawful interest, which might at once be passed into circulation for its full value. If, when the money is recovered from the borrower, the lender is deemed innocent, then so far from its being true, as the sages of the law tell us, "that where the real truth is a loan of money, the wit of man cannot find a shift to take it out of the statute," it is manifest that a very simple and obvious contrivance would render the law powerless. Like a spider in the center of its web, ensnaring its prey by distant filaments spun from its own body, the usurer might destroy his victim, and yet make no other movement than the last fatal one to devour the carcass. There ought, in my opinion, to be a new trial.